**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

JENNIFER MABEL C.

                                Plaintiff,          1:23-CV-01536

          v.                                    (BKS/CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**                      **OF COUNSEL:**
Law Offices of Kenneth Hiller.     JUSTIN GOLDSTEIN, ESQ.
6000 N. Bailey Ave., Suite 1A
Amherst, New York 14226
Attorney for plaintiff

Social Security Administration     JASON P. PECK, ESQ.
6401 Security Boulevard                 .
Baltimore, Maryland 21235
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

       Jennifer Mabel C.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for disability insurance benefits.  See Dkt.

No. 1.

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d). See Dkt. No. 5.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

Plaintiff moves for judgment on the pleadings. See Dkt. No. 10.[3] The Commissioner cross-moves[4] for judgment on the pleadings. See Dkt. No. 12. Plaintiff replies. See Dkt. No. 13. For the reasons stated below, the undersigned recommends plaintiff's motion be granted, the Commissioner's cross-motion be denied, and the Commissioner's decision be reversed and remanded for further proceedings.

## I. Background and Procedural History

On April 13, 2022, plaintiff filed a Title II application for disability insurance benefits, alleging a disability onset date of March 23, 2022. See T. at 86-87.[5] Plaintiff asserted she was disabled due to "stenosis lower back; osteoarthritis; two protruding discs in neck; leg and ankle tingling/numbness; [and] fatigue." Id. at 57.

The Social Security Administration ("SSA") denied plaintiff's claim on June 30, 2022. See T. at 67. Plaintiff sought reconsideration, see id. at 107, and her claim was again denied on October 4, 2022. See id. at 79. Plaintiff requested a hearing before Administrative Law Judge ("ALJ"), see id. at 122-23, and a hearing was held before ALJ Dale Black-Pennington on January 25, 2023. See id. at 23-46. On February 15, 2023, the ALJ issued an unfavorable decision. See id. at 10-22.

On October 31, 2023, the Appeals Council denied plaintiff's request for review of the ALJ's decision. See T. at 1-6. Plaintiff timely commenced this action before the Court on December 7, 2023. See Dkt. No. 1.

---

[3] Citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

[4] This matter has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[5] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 7. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

## II. Legal Standards

### A. Standard of Review

The court is granted the authority under sentence four of 42 U.S.C. § 405(g), "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner under Section 405(g), a district court may not determine de novo whether an individual is disabled. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). The Commissioner's determination may be reversed only if the correct legal standards were not applied, or the decision is not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal citations omitted). This "a very deferential standard of review," meaning once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and

the ALJ's decision is supported by substantial evidence, the Commissioner's conclusion must be upheld even if the evidence is "susceptible to more than one rational interpretation." Schillo v. Kijakazi, 31 F.4th 64, 74 (2d Cir. 2022) (quoting McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014)); see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (reminding that it is up to the ALJ to weigh conflicting evidence in the record) (citing Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)).

### B. Determination of Disability

Under 42 U.S.C. § 423, every individual who is under a disability shall be entitled to a disability benefits.  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A "medically determinable impairment" is an affliction that is so severe it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing, inter alia, Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §§ 404.1520 and 416.920, to determine whether an individual (the "claimant") is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")]. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps, and the Commissioner bears the burden at step five that the plaintiff is still able to engage in gainful employment somewhere. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).

### III. ALJ's Five-Step Disability Evaluation

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff "has not engaged in substantial gainful activity since March 23, 2022, the alleged onset date[.]"  T. at 12.  At step two, the ALJ found that plaintiff had the following severe impairments:  "degenerative disc disease of the cervical spine, osteoarthritis of the lumbar and cervical spines with spinal stenosis, rheumatoid arthritis, obesity, and anxiety disorder."  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  See id. at 12-14.  The ALJ then concluded that plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. §§ 404.1567(b), except that she could only:

> lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk four hours in an eight-hour day in one-hour intervals; sit about six hours in an eight-hour day; [] frequently finger and handle: [] frequently stoop, crouch and crawl; and [] occasionally manage change to the workplace environment and/or tasks.

Id. at 14.  At step four, the ALJ determined that plaintiff had no past relevant work.  See id. at 16.  At step five, considering the vocational expert ("VE") testimony and plaintiff's RFC, age, education, and work experience, the ALJ concluded that plaintiff could perform the following jobs existing in significant numbers in the national economy: (1) "Shipping Weigher," DOT # 222.387-074, 7,000 jobs; (2) "Booth Cashier," DOT # 211.462-010, 26,000 jobs; (3) "Marker," DOT # 209.587-034, 97,500 jobs; and (4) "Router," DOT # 222.587-038, 23,250 jobs.  See id. at 17.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since March 23, 2022, through the date of the decision[.]"  Id. at 18.

## IV. Discussion

Plaintiff argues that the ALJ erred by failing to apply the appropriate legal standards when evaluating the medical opinion of Physician's Assistant ("P.A.") Crowley and failed to identify substantial evidence supporting the RFC assessment.  See generally Dkt. Nos. 10, 13.  Thus, plaintiff contends the Commissioner's decision should be remanded for further administrative proceedings.  See id.

The Commissioner argues that ALJ Black-Pennington "correctly applied the regulations and reasonably assigned persuasiveness to the medical-opinion evidence when determining the RFC based on an informed record."  Dkt. No. 12 at 6. Thus, the Commissioner contends the decision should be affirmed.  See id.

For the reasons below, the undersigned finds that the decision contains legal error, requiring reversal and remand for further proceedings.

### A. Medical Opinions

### 1. Legal Standards

For claims filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness."  See id. In determining how "persuasive" a medical opinion or PAMF is, an ALJ must "consider" the following factors: "supportability, consistency, treatment relationship, specialization, and 'other factors.'"  Id. §§ 404.1520c(a) and (c)(1)-(5), 416.920c(a) and (c)(1)-(5). However, in many cases, the ALJ only need "explain" how the supportability and

consistency factors were considered, as they are "the most important factors."  Id. §§ 404.1520c(b)(2), 416.920c(b)(2); see also id. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3) (stating that the remaining factors need not be discussed unless the ALJ finds "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same").

For supportability, the regulations state:  "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1); see also Kathleen A. v. Comm'r of Soc. Sec. Admin., No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (noting that the supportability analysis "focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.'") (quoting Carmen M. v. Comm'r of the Soc. Sec. Admin, No. 20-CV-06532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)).  For "consistency," the regulations state:  "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2); see also Kathleen A., 2022 WL 673824, at *5 ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.") (quoting 20 C.F.R. § 404.1520c(c)(2); citing Galo G. v. Comm'r of the Soc. Sec. Admin, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)).

Although ALJs do not have to "'state on the record every reason justifying a decision' and '[are] not required to discuss every single piece of evidence submitted,'" they must at the very least articulate in their decision how persuasive they found the medical opinions and PAMFs. Ryan v. Comm'r of Soc. Sec., No. 21-2947-cv, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (citing Brault, 683 F.3d at 448); 20 C.F.R. §§ 404.1520c(b), 416.920c(b). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases [the] explanation upon a misreading of the record, remand is required." Rivera v. Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020)), report and recommendation adopted 2021 WL 134945 (N.D.N.Y. Jan. 14, 2021).

## 2. Analysis

On December 8, 2022, P.A. Crowley submitted a medical source statement after having treated plaintiff three times since August 2022. See T. at 475-77. Regarding plaintiff's mental limitations, P.A. Crowley diagnosed plaintiff with anxiety but believed her prognosis was "improving," and opined that plaintiff could tolerate "moderate" work stress, had bouts of anxiety that were "purely subjective," and was otherwise "basically functional." See id. Regarding plaintiff's physical limitations, P.A. Crowley opined that plaintiff did not have any limitations due to pain, but that she could sit, stand, and walk for only about four hours in a workday; could frequently lift and carry up to twenty pounds; could frequently finger, handle, and reach (including overhead); could

frequently perform other postural activities; would have "good days and bad days"; and was likely to miss one day of work per month due to her impairments.  See id.

The ALJ took note of some, but not all, of P.A. Crowley's opinions.  See T. at 16. Regarding plaintiff's mental impairments, the ALJ noted all of P.A. Crowley's opinions, including that plaintiff had the ability to tolerate moderate stress and was otherwise "basically functional."  Id.  Regarding plaintiff's physical limitations, the ALJ only noted P.A. Crowley's opinions that plaintiff was not limited due to pain but that she could only frequently lift and carry twenty pounds.  See id.  The ALJ then articulated the following assessment of P.A. Crowley's opinion:

> This [opinion] is not entirely inconsistent with the annual treatment visit that occurred in November 2022 where [plaintiff] reported being independent in all activities of daily living, examination was relatively normal, and [she] was not connected with any mental health specialist (Exhibit B10F, pages 1-11 [T. at 492-502]).  However, there is no real basis for limiting [plaintiff's] sitting to the extent opined by Mr. Crowley[,] and the restricted standing and walking appears to rely heavily on [plaintiff's] subjective complaints. Nevertheless, consideration has been applied and the overall opinion is provided with more than some persuasiveness.

T. at 16.

This paragraph and the RFC demonstrate that the ALJ relied heavily on P.A. Crowley's opinions, as the ALJ gave "little persuasion" to the PAMFs and there were no other medical opinions in the record.  T. at 16.  It appears that the ALJ was at least partially persuaded by P.A. Crowley's opinions on plaintiff's mental limitations, as the RFC incorporates a single matching limitation that plaintiff could "occasionally manage change to the workplace environment and/or tasks."  Id. at 14.  It is also clear that the ALJ was persuaded by P.A. Crowley's opinions that plaintiff could only stand/walk for

four hours in an eight-hour day; frequently finger and handle; and frequently stoop, crouch, and crawl, as these limitations were adopted into the RFC.  See id.  Conversely, the ALJ appears not to have been persuaded by P.A. Crowley's opinion that plaintiff: (1) could sit for up to four hours in an eight-hour day (adopting a six-hour sitting limitation into the RFC); (2) could lift and carry up to twenty pounds frequently (adopting a lift/carry limitation of twenty pounds occasionally and ten pounds frequently into the RFC); (3) could reach frequently (declining to adopt any reaching limitation in the RFC); and (4) would have "good days and bad days" and was likely to miss one day of work per month due to her impairments (declining to adopt any absentee limits in the RFC). Cf. T. at 475-77, with T. at 14.

However, although the ALJ uses the term "inconsistent" in assessing P.A. Crowley's opinion, the ALJ only cites one record—which P.A. Crowley generated himself—in support of this finding.  See T. at 16 (citing T. at 492-502 (P.A. Crowley's Nov. 1, 2022, treatment record)).  In this way, the ALJ's explanation confuses the issues of consistency and supportability.  See Kathleen A., 2022 WL 673824, at *4-5 ("The supportability analysis focuses on how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations . . . . In the consistency analysis, an ALJ must look outside the medical opinion itself to evidence from other medical sources and nonmedical sources in the claim . . . .") (citing Carmen M., 2021 WL 5410550, at *4; 20 C.F.R. § 404.1520c(c)(1)-(2)).  More importantly, the ALJ makes no attempt to explain (with one arguable exception) how the sitting, lifting/carrying, reaching, and absentee limitations compare with evidence beyond P.A. Crowley's treatment records.  See 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2) (stating that

a discussion of consistency requires a comparison between the medical opinion and "evidence from other medical sources and nonmedical sources in the claim").  Under the relevant regulations, the ALJ must explain both supportability and consistency for each medical opinion in the record, as these are "the most important factors."  Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ's failure to provide a consistency rationale for P.A. Crowley's medical opinion is legal error.  See Loucks v. Kijakazi, 21-1749, 2022 WL 2189293, at *2 (2d Cir. Jun. 17, 2022) ("[T]he ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record."); Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313 (ATB), 2021 WL 706645, *8 (N.D.N.Y. Feb. 22, 2021) ("[T]he amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings'.") (quoting Jacqueline L. v. Comm'r of Soc. Sec., No. 6:19-CV-6786 (EAW), 2021 WL 243099, at *6 (W.D.N.Y. Jan. 26, 2021)).

The Commissioner contends that the Court should look to the ALJ's summary of plaintiff's medical records, provided earlier in the decision, as evidence that the ALJ sufficiently considered and articulated his reasoning with respect to the consistency factor.  See Dkt. 12 at 11-12 (citing T. at 15).  It is true that an ALJ's analysis can be found legally proper, despite never using the words "supportability" or "consistency," when the articulation is "sufficient for the [c]ourt to glean the ALJ's rationale as to the supportability and consistency factors."  Jennifer A. v. Comm'r of Soc. Sec., No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (citing Eric G. v. Comm'r of Soc. Sec., No. 5:21-CV-01314 (MAD/ML), 2023 WL 3004780, at *4, n.1

(N.D.N.Y. Jan. 5, 2023).  However, courts in this circuit have indicated that ALJs not only identify supporting evidence, they also must "build an accurate and logical bridge from that evidence to [the] conclusion."  Courtney F. v. Berryhill, No. 5:18-CV-0047 (LEK) 2019 WL 4415620, *7 (N.D.N.Y. Sept. 16, 2019) (quoting Doxey v. Comm'r of Soc. Sec., No. 17-CV-1036, 2019 WL 2325076, *6 (W.D.N.Y. May 31, 2019)).  Here, the ALJ's conclusions are neither linked to the evidentiary summary nor wholly representative of the record.

First, the ALJ only briefly mentions P.A. Crowley's opined limitation that plaintiff could frequently lift and carry up to twenty pounds, and the ALJ appears to have ignored the P.A.'s opinions that plaintiff could frequently reach and was likely to miss one day of work per month because she was likely to have good days and bad days.  Compare T. at 475-77, with T. at 14-16.  Mentioning portions of an opinion is not the same as providing an explanation as to why these three opined limitations would be inconsistent with the record, especially given that evidence does exist in the record that could support such limitations.  See, e.g., T. at 452, 454 (Fall 2022 physical therapy records noting continued dysfunction in the spine and hips and limitations with bending and rotation); 452 (Nov. 21, 2022, record noting plaintiff's frequent cancelations due to anxiety).  Thus, the decision's prior summary of the evidence does not rectify the ALJ's error in failing to provide a consistency analysis.  See Loucks, 2022 WL 2189293, at *2; Raymond M., 2021 WL 706645, *8.  Although these three errors ultimately are harmless (see Section IV.B. infra), they still demonstrate the ALJ's failure to sufficiently explain how P.A. Crowley's opinion compared to "evidence from other medical sources and

nonmedical sources in the claim" under 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2).

Second, as to how long plaintiff would be able to sit in an eight-hour workday, the undersigned does not read the ALJ's analysis as containing a consistency finding, such that a "logical bridge" could be built between her conclusions and the prior summary of plaintiff's medical records. See Courtney F., 2019 WL 4415620, *7. In the discussion of P.A. Crowley's four-hour sitting limitation, the ALJ concluded there was "no real basis for limiting [plaintiff's] sitting to the extent opined by Mr. Crowley . . . ." T. at 16. By only referencing P.A. Crowley's November 2022 treatment record, and by tying the sitting limitation to "the extent opined by Mr. Crowley," the ALJ appears to be assessing the supportability of P.A. Crowley's opinion. Kathleen A., 2022 WL 673824, at *4 ("The supportability analysis focuses on how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations."). However, even if this phrase is meant to link the ALJ's "no real basis" statement to the previous evidentiary summary, evidence exists in the record that could be consistent with P.A. Crowley's four-hour sitting limitation, as plaintiff notes. See Dkt. No. 10 at 3-8 (citing numerous medical records demonstrating plaintiff had issues with her cervical spine and lower extremities). See, e.g., McGill v. Saul, No. 18-CV-6430 (PKC), 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) (finding inappropriate cherry picking of evidence where ALJ gave little weight to physician's opinion about the plaintiff's ability to sit based on records showing normal range of motion, where records also detailed limitations in lumbar/sacral spine and sharp pain in the back) (citing Quinto v. Berryhill, No. 17-CV-24 (JCH), 2017 WL 6017931, at *14 (D. Conn. Dec. 1, 2017) ("The ALJ is not permitted to

cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight.") (citation omitted); McAuliffe v. Barnhart, 571 F. Supp. 2d 400, 404-05 (W.D.N.Y. 2008) (finding, inter alia, that medical evidence demonstrating the plaintiff's history of lumbar radiculopathy at L5-S1, narrowing of disc space, steroid injections, and chiropractic treatment, combined with medical professionals' notes of the plaintiff's lower back pain, supported medical source opinion that the plaintiff could sit for less than six-hours in an eight-hour workday).

For example, plaintiff cites a March 25, 2022, record where Dr. Joseph Popper noted results from an MRI revealing, among other things, "[b]road based disc bulge at L4-L5 produces mild right and moderate left neural foraminal narrowing"; "disc protrusions at the C5-CS and C6-C7 levels [with] [s]evere narrowing of the left neural foramina at C6-C7"; and discs that "do appear to touch the thecal sac centrally[.]"  T. at 431.  In a May 17, 2022, treatment record, Nurse Practitioner Dorothy LaCombe noted that plaintiff had moderately limited range of motion with pain.  See T. at 392.  Physical therapy records from Fall 2022 noted that plaintiff continued to "demonstrate some dysfunction in both the lower spine and the left [sacroiliac joint]" and "some [cervical] spine limitations with left side bend and rotation[.]"  T. at 452, 454.  In the face of this evidence, the undersigned cannot "glean" from the decision the ALJ's logic for how there is "no real basis" to limit plaintiff to a four-hour sitting limitation—especially when the ALJ concluded that the same evidence supports the six-hour sitting limitation.  See Rivera, 2020 WL 8167136, at *14 ("If the ALJ fails adequately to 'explain the

supportability or consistency factors,' or bases her explanation upon a misreading of the record, remand is required.") (quoting Andrew G., 2020 WL 5848776, at *5).

### B. Harmless Error

The Second Circuit has often noted in Social Security cases that "[w]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." Johnson v. Bowen 817 F.2d 983, 986 (2d Cir. 1987) (citing Havas v. Bowen, 804 F.2d 783, 786 (2d Cir. 1986)). However, the Court in Johnson ultimately remanded for reconsideration because, on the record in that case, "findings of either disability or no disability could be sustained." Id. at 986. This was because a medical provider opined that the plaintiff was disabled but the doctor's office notes and the plaintiff's testimony suggested that the plaintiff could perform light and sedentary work, and nothing in the decision indicated that the ALJ applied the proper rule to assess the medical provider's opinion. See id. at 985-86.

Here, the undersigned agrees with the Commissioner that three of the ALJ's errors are harmless. See Dkt. No. 12 at 8-9. First, P.A. Crowley opined that plaintiff could only frequently lift and carry up to twenty pounds, but the ALJ adopted a limitation in the RFC that plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. Compare T. at 476 with T. at 14. The limitation adopted into the RFC is more restrictive than P.A. Crowley's opinion. Although the decision does not make clear *why* the RFC was fashioned in this way, accepting P.A. Crowley's opinion would not change the jobs the VE cited at step five. See Ramsey v. Comm'r of Soc. Sec., 830 F. App' x 37, 39 (2d Cir. 2020) (summary order) (upholding an RFC finding where "the ALJ occasionally deviated from consultative examiners' recommendations to

*decrease* [the claimant's] RFC based on other evidence in the record") (emphasis in

original)); see also Johnson, 817 F.2d at 986 (noting further reconsideration of error is

not required where "application of the correct legal principles to the record could lead to

only one conclusion[.]").

Second, adding a "frequent reach" limitation to the RFC, as P.A. Crowley opined,

would not affect the jobs the ALJ and VE cite at step five, as the Cashier II, Marker, and

Router jobs each allow for frequent reaching. See Cashier, DOT # 211.462-010 (4th ed.

1991), available at 1991 WL 671840; Marker, DOT # 209.587-034 (4th ed. 1991),

available at 1991 WL 671802; and Router, DOT # 222.587-038 (4th ed. 1991), available

at 1991 WL 672123. Thus, the ALJ's failure to address P.A. Crowley's reach limitation

is harmless. See Sanchez v. Berryhill, 336 F. Supp. 3d 174, 179 (W.D.N.Y. 2018)

(finding harmless error in the ALJ's alleged omission of certain limitations in the RFC,

where the jobs the vocational expert identified could be performed by a person with the

omitted limitations) (citing Akey v. Astrue, 467 F. Appx. 15, 17 (2d Cir. 2012) (summary

order) (additional citations omitted).

Third, the VE stated that, in his experience, "most employers will tolerate one day

of absenteeism per month" for each of the unskilled jobs cited. T. at 43; see also id. at

45 (VE's statement that his testimony was consistent with the Dictionary of

Occupational Titles save for his "absenteeism" statements, which were based on his

education, training, and experience). Thus, even if an absentee limitation of one day

per month were added to the RFC, as P.A. Crowley opined, it would have no effect on

the step five determination. See Hastrich v. Comm'r of Soc. Sec., 366 F. Supp. 3d 388,

400 (W.D.N.Y. 2019) (finding omission of certain limitations from the RFC to be

harmless where the "vocational expert testified that, even with those additional limitations, Plaintiff would be able to perform the jobs [cited by the vocational expert]").

However, the same cannot be said for P.A. Crowley's opined sitting limitation. The ALJ stated that plaintiff could sit for six hours in a eight-hour workday, finding "no real basis" for a four-hour sitting limitation.  T. at 14, 16.  As the undersigned has noted above, the evidence in the record could be consistent with a four-hour sitting limitation. See Section IV.A.2. supra (citing, e.g., T. at 431, 392, 452, 454).  Either interpretation could be articulated in a legally-sufficient manner, as long as the consistency of P.A. Crowley's opinion is properly explained under 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

This error is not harmless because a four-hour sitting limitation could affect whether plaintiff is able perform other employment in the national economy during the relevant period.  See Johnson, 817 F.2d at 986.  The ALJ's determination at step five was based on the VE's testimony concerning the work a hypothetical person could do with certain limitations, including the ability to "sit 6 of 8 hours" in a workday.  See T. at 41-42.  Based on the hypotheticals the ALJ posed, the VE cited four occupations existing in significant numbers in the national economy that could be done by a person who could sit for six hours:  (1) "Shipping Weigher," DOT # 222.387-074, 7,000 jobs; (2) "Booth Cashier," DOT # 211.462-010, 26,000 jobs; (3) "Marker," DOT # 209.587-034, 97,500 jobs; and (4) "Router," DOT # 222.587-038, 23,250 jobs.  See T. at 42-44. Each of these jobs are listed at the light exertion level, which requires "a good deal of walking or standing" or "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work."

20 C.F.R. §§ 404.1567(b), 416.967(b).  These jobs may not be available to a person who can only sit for four hours in a workday, and in fact, the Commissioner's policy interpretation on this topic states that <u>sedentary</u> work generally requires the ability to sit for approximately six hours of an eight-hour workday.  <u>See</u> SSR 96-9p "Titles II and XVI: Determining Capability To Do Other Work—Implications of a Residual Functional Capacity For Less Than A Full Range of Sedentary Work," (Jul. 2, 1996), <u>available</u> <u>at</u> 1996 WL 374185 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").[6]

It could be that a four-hour sitting limitation would erode the base number of jobs available, which could compel a finding of disability.  <u>See</u> SSR 96-9p, <u>available</u> <u>at</u> WL 1996 1996 WL 374185 ("If an individual is unable to sit for a total of 6 hours in an 8-hour workday, the unskilled sedentary occupational base will be eroded.  The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work.").  It also could be that a finding of disability would be proper, as plaintiff contends, because of plaintiff's approaching advanced age, education, and alleged inability to sit for more than four hours in a workday.  <u>See</u> Dkt. No. 10 at 17 (citing Medical-Vocational Guideline 201.12, 20 C.F.R. 404, Subpart P, Appendix 2 (noting that a finding of disabled follows for a person closely approaching advanced age with unskilled or no previous work experience).  Conversely, P.A. Crowley's four-hour sitting limitation could be found inconsistent with the medical

---

[6] "SSR" stands for "Social Security Rulings" which do not have the force of law but are binding on "all components of the Social Security Administration."  <u>Heckler v. Edwards</u>, 465 U.S. 870, 873 n.3 (1984).

evidence, other evidence, or any potential consultative examination that can be ordered by an ALJ—so long as the consistency is properly explained.  See Annarino v. Comm'r of Soc. Sec., No. 18-CV-130-JWF, 2019 WL 4643604, at *3 (W.D.N.Y. Sept. 24, 2019) ("[I]t is the ALJ's duty to develop the record and resolve any known ambiguities . . . .") (citing Camilo v. Comm'r of the Soc. Sec. Admin., No. 11 CIV. 1345 DAB MHD, 2013 WL 5692435, at *22 (S.D.N.Y. Oct. 2, 2013)).  In sum, there is, at least a reasonable likelihood that a different result could have been reached if the ALJ had properly evaluated the opinion evidence pursuant to the required regulations; thus, remand is required.  See Leto v. Comm'r of Soc. Sec., No. 22-CV-00863 (SDA), 2023 WL 2344936, at *16 (S.D.N.Y. Mar. 3, 2023) (holding procedural error was not harmless where a finding of greater limitations could result in determination that the plaintiff was unable to work) (citing accord Bey v. Comm'r of Soc. Sec., No. 21-CV-07832 (KHP), 2023 WL 1098183, at *10 (S.D.N.Y. Jan. 30, 2023)); see also Sawicki v. Comm'r of Soc. Sec., No. 21-CV-02093 (LJL), 2023 WL 5164212, at *11 (S.D.N.Y. Aug. 11, 2023) (same) (citing, inter alia, McIntosh v. Kijakazi, 2022 WL 2384151, at *4 (S.D.N.Y. July 1, 2022) ("Because the ALJ failed to address the supportability or consistency of Dr. Etemadi's medical opinions, and it was not harmless error, remand is warranted."); Loucks, 2022 WL 2189293, at *2).

Although "'a court 'may affirm' despite procedural error 'where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole,'" Wanda N. v. Comm'r of Soc. Sec., No. 6:21-CV-00358 (TJM), 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022) (quoting John L. M. v. Kijakazi, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2) (N.D.N.Y. Aug. 18, 2022)), the undersigned

is unable to make such a recommendation here for the reasons stated above.

Accordingly, it is recommended that the ALJ's decision be vacated, and this matter be

remanded to the Commissioner for further proceedings consistent with this Report-

Recommendation and Order.  See Johnson, 817 F.2d at 986; see also Loucks, 2022

WL 2189293, at *2 (noting that, "[w]hen the ALJ has committed procedural error, we

generally remand with instructions to reconsider the disability claim consistent with the

procedural mandates of the governing regulations."); Estrella v. Berryhill, 925 F.3d 90,

96 (2d Cir. 2019) (remanding to the SSA when the ALJ procedurally erred, and a

"searching review of the record" provides no assurance that the "substance of the . . .

rule was not traversed.") (quoting Halloran, 362 F.3d at 32).  On remand, it is

recommended that the ALJ be instructed to properly evaluate the persuasiveness of

each of the opinions, specifically and fully explaining the findings, and, if determined

necessary, further develop the record as appropriate.  See Briselida R. v. Comm. of

Soc. Sec., 5:22-CV-01290 (TJM/ML), 2023 WL 9600841, at *11 (N.D.N.Y. Nov. 20,

2023), report and recommendation adopted 2024 WL 532568 (N.D.N.Y. Feb. 8, 2024);

Rivera, 2020 WL 8167136, at *14 ("If the ALJ fails adequately to 'explain the

supportability or consistency factors, or bases her explanation upon a misreading of the

record, remand is required.'") (quoting Andrew G., 2020 WL 5848776, at *5).

### V.    Conclusion

Having carefully considered the record herein and the arguments before the

Court, it is hereby:

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No.

10) be **GRANTED**, the matter be remanded to the Commissioner for further

proceedings consistent with this Report-Recommendation & Order, and that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**; and it is

      **ORDERED**, that the Clerk serve this Report-Recommendation & Order on the parties in accordance with the Local Rules.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1999)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: October 24, 2024
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge